IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SOUTHERN LEGACY OF LIFE, and**
**JULIE BARBER**                                                                                    **PLAINTIFFS**

v.                                    CASE NO. 4:25-cv-773-JM

**COLE JESTER, in his official capacity as**
**Secretary of State, et al.**                                                                **DEFENDANTS**

**DEFENDANTS' SUPPLEMENTAL REPLY BRIEF**

**INTRODUCTION**

Plaintiffs made a variety of arguments and assertions in the introduction section of their supplemental brief. Defendants address them in turn in this introduction section.

1.     Plaintiffs assert in their introduction that "Defendants continue to rely on Eleventh Amendment immunity despite that Act 861 at section 20-17-1228(f), excludes OPOs and family members who carry out a decedent's organ donation gift from immunity from criminal and civil liability." Pls.' Supp. Br. 2, ECF No. 43. Plaintiffs are correct that Defendants continue to rely on Eleventh Amendment immunity. That is because Defendants' immunity remains intact as Plaintiffs have failed to show the *Ex parte Young* exception applies. But contrary to Plaintiffs' suggestion, OPOs and family members have immunity under the immunity provision found in the Revised Arkansas Anatomical Gift Act, Ark. Code Ann. § 20-17-1218(a)—a point that Defendants have made repeatedly. *See, e.g.*, Defs.' PI Opp. 2, ECF No. 35. At the preliminary-injunction hearing, the Court misread Ark. Code Ann. § 20-17-1228(f), which is the immunity provision in Act 861, as stating that it applies "notwithstanding" any other law, and then concluded the notwithstanding language made § -1218(a) inapplicable. PI Tr. 160:19-21 ("It says notwithstanding any language in this chapter, F applies. We don't care what the indemnity says anywhere else in the statute, this F applies."), 161:17-18 ("So I don't get to look at the other indemnity language, I only get to look at F."). But the text of § -1228(f) doesn't say it applies "notwithstanding" any other provision, so § 1218(a) still applies to provide Plaintiffs with immunity if they're attempting to comply with the law in good faith.

2.     Plaintiffs next claim that, "[i]n a change from their previous position, Defendants now admit that they may seek to enforce Act 861 through the criminal statute concerning abuse of

2

a corpse and other means." Pls.' Supp. Br. 2, ECF No. 43. Defendants haven't changed their position. Defendants never admitted that they "enforce Act 861" or will do so though other statutes. *Id*. Instead, Defendants have consistently maintained that they do not enforce Act 861 (except for the reporting requirement in § -1229 that Secretary Jester enforces). *See, e.g.*, Defs.' PI Opp. 16–17, ECF No. 35. To the extent there was any confusion, Defendants have simply clarified that they are not stipulating that they will not enforce any other laws, which are not challenged in the complaint, against Plaintiffs if those laws apply.

3.  Plaintiffs next suggest that "[t]here is no evidence in the record to support Defendants' argument that lifetime organ donations are poorly informed or fail to implement the prospective donor's intent." Pls.' Supp. Br. 3, ECF No. 43. Yet Defendants pointed to Mark Tudor's testimony that when someone signs up at the DMV to be an organ donor—which is 95% of all organ donors, PI Tr. 48:22-23, "[t]hey're just asked if they want to be an organ donor" and are not given all the information about it, *id*. 48:24-50:10, including that OPOs will harvest not just their organs, but also their tissue, bones, and skin, *see, e.g.*, *id*. 45:4-10. This testimony illustrates that Act 861 is respectful of organ donors' wishes; it allows their organs to be donated and allows families to implement their wishes regarding potential donation of tissue, skin, and bones. *See* Defs.' Supp. Br. 5–6, ECF No. 42.

4.  Plaintiffs argue next that donors have "donated organs and tissue without restriction" and that there is no evidence they would intend Arkansas law to put restrictions on donations. Pls.' Supp. Br. 3–4, ECF No. 43. But as explained above, Plaintiffs cannot show that donors checking the organ donor box at the DMV intend to donate their tissue at all, much less make all their donations without any restrictions or taking into account changed circumstances.

5.       Plaintiffs argue next that Defendants "contradict[] their own arguments with implicit threats." Pls.' Supp. Br. 4, ECF No. 43. This argument consists of two components. First, Plaintiffs note that Defendants had previously argued that OPOs and other retain their immunity under Revised Arkansas Anatomical Gift Act's immunity provision, but didn't repeat that argument in their supplemental brief. *Id.* But as their name implies, supplemental briefs are meant to supplement arguments, and there was no need for Defendants to repeat every one of their arguments. Defendants continue to stand by their previous argument that the Revised Arkansas Anatomical Gift Act's immunity provision applies to OPOs and family members for good-faith violations of Act 861. *See* Defs.' PI Opp. 2, ECF No. 35. Second, Plaintiffs argue that Defendants "reserve their right to prosecute violations of Act 861 for abuse of a corpse (among other things), and take no position on whether a private right of action exists under Act 861." Pls.' Supp. Br. 4, ECF No. 43. Defendants were not "reserving their right" to take any sort of action—either criminal or civil—against Plaintiffs. Defendants were pointing to an important distinction in *Ex parte Young* caselaw. Under the *Ex parte Young* doctrine, an official is immune from suit under the Eleventh Amendment when (1) he does not have authority to enforce the challenged law, or (2) even if he does have authority to enforce the challenged law, he has nonetheless stipulated to, usually in an affidavit, his "unwillingness to exercise" that authority. *281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014). Thus, when Defendants asserted that they "have not scoured all Arkansas statutes and make no assurances regarding what their enforcement authority may be to enforce other laws against Plaintiffs," Defs.' Supp. Br. 2, ECF No. 42, Defendants were not making any sort of "implicit threat," Pls.' Supp. Br. 4, ECF No. 43. Defendants were merely clarifying that they have not made the kind of non-enforcement stipulation that's recognized in *Ex*

*parte Young* caselaw because they do not need to. Plaintiffs have failed to show that Defendants have authority to enforce the challenged law: Act 861. In any event, Defendants have made no threats. To the contrary, they have maintained (other than a corrected misstatement at the expedited hearing on the temporary restraining order)[1] that Act 861 is not a criminal statute and that the Revised Arkansas Anatomical Gift Act's immunity provision applies to OPOs and family members for good-faith violations of Act 861. Finally, as noted, Plaintiffs point out that Defendants "take no position on whether a private right of action exists under Act 861." Pls.' Supp. Br. 4, ECF No. 43. True enough, Defendants do not take a position on this because it is irrelevant to this case or controversy and to whether Plaintiffs have standing to sue these Defendants or have overcome Defendants' immunity.

## Argument

**Sovereign Immunity.** In their supplemental brief, Defendants showed that *Ex parte Young*'s narrow exception to sovereign immunity does not apply to the Attorney General or State Prosecutors in this case. In response, Plaintiffs make a host of arguments as to why they think *Ex parte Young* applies. None of their arguments are availing. Defendants address each in turn below.

1.  Plaintiffs first make the uncontroversial point that a state official's enforcement authority can arise out of "the general law" or be specially created by the act itself. Pls.' Supp. Br.

---

[1] As previously explained, *see* Defs.' PI Opp. 14, ECF No. 35, in the initial expedited hearing for a temporary restraining order where (1) the only defendants were the Attorney General and the Secretary of State and (2) counsel had less than a full business day to prepare, counsel mistakenly assumed that Act 861 was a criminal statute based on Plaintiffs' false characterizations of the Act. And based on that assumption, counsel noted that the Attorney General and Secretary of State lacked prosecutorial authority that would allow the *Ex parte Young* exception to apply. When Plaintiffs added State Prosecutors to the suit, counsel realized that Act 861 was not a criminal statute and so the prosecutors lacked enforcement authority as well.

5, ECF No. 43. No one disagrees with that point. But it doesn't mean what Plaintiffs think it means. Plaintiffs interpret "the general law" to mean any law that a state official could enforce against Plaintiffs, so long as the conduct prohibited by "any law" is similar to the conduct prohibited by Act 861. *See* Pls.' Supp. Br. 6, ECF No. 43. But that's not what "the general law" means. *Ex parte Young* jurisprudence teaches that "the general law" "merely delineates *where* the enforcement mechanism that provides the connection can be located—either within the complained act or elsewhere in the law." *Bio Gen LLC v. Sanders*, 142 F.4th 591, 605 (8th Cir. 2025) (emphasis in original). For instance, the Arkansas Constitution vests local prosecutors with authority to prosecute violations of criminal laws. *See id.* at 605. So if Act 861 carried criminal penalties for violations of it, then "the general law"—meaning the Arkansas Constitution—would give local prosecutors the authority to enforce Act 861, even if Act 861 did not specifically state that it could be enforced by local prosecutors. When *Ex parte Young* refers to "the general law," that's what it means. Plaintiffs, however, give that phrase an entirely different meaning. Their argument is that "the general law" means enforcement *of different statutes*, "among other things, the abuse-of-a-corpse statute." Pls.' Supp. Br. 6, ECF No. 43. But the question under *Ex parte Young* is not whether Defendants enforce "among other things, the abuse-of-a-corpse statute," *id.*, but whether they enforce "the challenged law"—Act 861. *Bio Gen*, 142 F.4th at 604. The Attorney General and State Prosecutors do not have the authority to enforce Act 861, either through Act 861 itself or through some other provision of the general law.

2.  Plaintiffs next set up a strawman argument. They say that Defendants take the position that *Ex parte Young* "applies to state actors only when the challenged statute provides the defendant with a specific enforcement mechanism." Pls.' Supp. Br. 5. That's an easy argument to

6

attack; but it's also an argument that Defendants never assert. *See*, *e.g.*, Defs.' Reply in. Supp. of Mot. to Dismiss 3–4, ECF No. 34 ("But there is no enforcement mechanism—within Act 861, Amendment 21, 'or elsewhere in the law,' *see Bio Gen*, 142 F.4th at 605—that would allow State Prosecutors to prosecute a violation of Act 861 because Act 861 is not a criminal statute."). Defendants do not argue that the authority to enforce the challenged law must arise out of the challenged law itself; *Ex parte Young* teaches that it can arise from other sources. But regardless of *where* that authority springs from, the authority that the defendant wields must be the authority to enforce the challenged law itself, not some other law. The Attorney General and State Prosecutors do not enforce Act 861.

  **3.** Plaintiffs next rely on *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), for the proposition that the authority to enforce "other laws"—as opposed to the challenged law—is sufficient for *Ex parte Young* purposes. Pls.' Supp. Br. 6, ECF No. 43. That's a misreading of *Jackson*. The Court in *Jackson* held that the executive directors of Texas's medical, nursing, and pharmacy boards could be enjoined from enforcing Texas Senate Bill 8. Senate Bill 8 prohibited physicians from knowingly inducing an abortion if the physician detected a fetal heartbeat for the unborn child, unless a medical emergency prevented compliance. The Court determined that these defendants were proper *Ex parte Young* defendants for a simple reason: "Each of these individuals is an executive licensing official who may or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code, including S. B. 8." *Id*. at 45-46. Specifically, Texas Occupational Code § 164.055 required the Texas Medical Board to take "'disciplinary action against a physician who violates . . . Chapter 171, Health and Safety Code,' a part of Texas statutory law that *includes* S. B. 8." *Id*. at 46 (emphasis in original). Hence the Court

7

concluded that, "at least based on the limited arguments" before it, "it appears that the licensing defendants do have authority to enforce S. B. 8." *Id*.

The Court in *Jackson* thus drew a straight line from S. B. 8—via the Health and Safety Code and then the Occupational Code—to the licensing officials that it enjoined. In other words, the petitioners demonstrated to the Court that the licensing officials could enforce the challenged law. Plaintiffs cannot make a similar showing here. And critically, the *Jackson* Court drew the opposite conclusion for the Texas Attorney General: "the petitioners d[id] not direct [the] Court to any enforcement authority the attorney general possesses in connection with S. B. 8 that a federal court might enjoin him from exercising." *Id*. at 43. Here, like *Jackson*, Plaintiffs have not directed this Court to any enforcement authority that the Attorney General or State Prosecutors possess in connection with Act 861 that this Court might enjoin them from exercising. Put another way, there is no statute or other provision of Arkansas law that Plaintiffs have identified to connect the Attorney General or State Prosecutors to Act 861.

In an effort to surmount this problem, Plaintiffs contend that Defendants should be enjoined from enforcing Act 861 because they could prosecute Plaintiffs under a different statute: Arkansas's abuse-of-a-corpse statute. But *Jackson* does not support this argument and Eighth Circuit precedent forecloses it. The plaintiffs in *Digital Recognition Network v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), sued the Arkansas Attorney General to enjoin the enforcement of a law known as the Reader System Act—a law that prohibited the automated collection of license plate numbers. The plaintiffs' business model involved attaching cameras to tow trucks and automatically taking pictures of license plates; the plaintiffs then sold the license-plate information to repossession companies and others; the plaintiffs alleged that the Reader System Act violated

8

the First Amendment. The Attorney General did not enforce the Reader System Act. But she did have the authority to file public nuisance lawsuits. The plaintiffs accordingly sued the Attorney General and argued that their conduct (the automated collection of license plate data) would not only violate the Reader System Act but would also constitute a public nuisance. Hence the plaintiffs' theory was that even if the Attorney General did not have a sufficient connection to the Reader System Act directly, the Attorney General was nonetheless a proper *Ex parte Young* defendant because she could file a public nuisance lawsuit against the plaintiffs for the automated collection of license plate data.

That is the same species of argument that the Plaintiffs press here. The Eighth Circuit flatly rejected it, and so should this Court. The Eighth Circuit reasoned that *Ex parte Young* only allows courts to enjoin state officials that enforce the *challenged law*. The challenged law was the Reader System Act. Here, it's Act 861. The Court's reasoning is directly on point: "Even if acts violating the Reader System Act are also actionable as public nuisances, however, the attorney general's enforcement action under the common law would not have 'some connection with enforcement' *of the Reader System Act*." *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 963 (8th Cir. 2015) (emphasis in original). That logic applies here. Even if acts violating Act 861 are also actionable under the abuse-of-a-corpse statute (or other law), the Attorney General and State Prosecutors' enforcement action under that statute (or other law) would not have "some connection with enforcement" *of Act 861*.

4.      Plaintiffs next argue that the Attorney General and State Prosecutors have "admitted that they can 'giv[e] effect' to Act 861 through other statutes 'in a manner that [will] injur[e] a plaintiff[.]'" Pls.' Supp. Br. 5. Defendants did no such thing. To support that assertion,

9

Plaintiffs point to a statement in Defendants' supplemental brief that Defendants are not making any assurances regarding what their enforcement authority may be. *Id.* (citing Defs.' Supp. Br. 2). Plaintiffs misunderstand Defendants' argument. *First*, Defendants were clarifying that it is the Plaintiffs' burden to prove that *Ex parte Young* applies. Defs.' Supp. Br. 4–5. It is not the Defendants' burden to scour all potential sources of enforcement authority and demonstrate that none are applicable. *Id.* at 5. *Second*, Defendants were clarifying that they did not *stipulate* that they would not enforce laws they have authority to enforce. *Id.* That's different than saying Defendants lack enforcement authority. And that's relevant because in the *Ex parte Young* context, a state official is entitled to immunity when either (1) the state official does not have authority to enforce the challenged law (which is what Defendants have argued), or (2) even if the state official does have authority to enforce that law, he has stipulated (usually in an affidavit) that he will not enforce that law against the plaintiff. *See, e.g., 281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) (Minnesota Attorney General entitled to immunity when she signed affidavit stating that she would not enforce the challenged law against the plaintiffs). Here, Defendants were merely clarifying that they have not made any such stipulation. Defendants have argued—and continue to argue—under prong one that they do not have authority to enforce Act 861 in the first place.

  **5.** Plaintiffs next argue that the Secretary of State should be enjoined from enforcing the entirety of Act 861, even though it's plain that he only enforces § -1229. Pls.' Supp. Br. 6–7, ECF No. 43. Plaintiffs claim that Defendants "attempt to minimize" the Secretary of State's "enforcement by claiming that it only applies to the reporting requirement." *Id.* at 7. But that's plainly true; the Secretary of State's only role in Act 861 is revoking an OPO's state charter if it fails to report certain information. Despite this, Plaintiffs argue that the reporting requirement *qua*

10

the reporting requirement "has the effect of compelling the OPO to administer all parts of Act 861, no matter how vague or unconstitutional, in order to generate the report required by Act 861" because "an OPO must produce in its report, among other things, data regarding how many modifications, amendments, and revocations of anatomical gifts were made by next of kin." *Id*. at 7. But nothing in the reporting requirement compels compliance with § -1228. An OPO could refuse to comply with § -1228 and still satisfy § -1229 by simply generating and submitting the required report. Plaintiffs' request that the Court "should nevertheless order the full relief requested by Plaintiffs solely against the Secretary of State," *id*. at 7, must be denied because the Secretary of State does not enforce § -1228.

**Arkansas Common Law.** In their supplemental brief, Defendants showed that Arkansas common law fills in the gaps left by Act 861. Defs.' Supp. Br. 7–8, ECF No. 42. Specifically, Defendants showed that Act 861 does not allow family members to revoke donation decisions even after the donated organ is in transit to the recipient or after it is transplanted in the recipient. *Id*. at 7. And that is because, under Arkansas common law, an organ procurement organization can accept a gift of an organ on behalf of the ultimate recipient of the organ. *Id*. at 7–8. In response, Plaintiffs first argue that Act 861 supersedes existing law, including the common law, when there is an irreconcilable conflict between the two. Pls.' Supp. Br. 8–9, ECF No. 43. Defendants don't dispute that a statute supersedes the common law when there is an irreconcilable *conflict* between the two. But Plaintiffs have not pointed to *conflicts* between the text of Act 861 and common law; they have pointed to instances where they say Act 861 is *silent*. Under that circumstance, Arkansas common law fills the gaps left by Act 861. *See Meadows v. State*, 291 Ark. 105, 107, 722 S.W.2d 584, 585 (1987) ("The applicable rule of construction is that the common law in force at the time the

statute was passed is to be taken into account in construing undefined words of the statute."). Act 861 provides when a family member first has the opportunity to revoke a non-consummated donation decision (two hours after pronouncement of death), and the common law provides when that power to revoke ends (after the consummation of donations).

Plaintiffs next argue that, under their reading of Arkansas common law, "once an OPO takes possession of a donor's *body*,"—as opposed to a particular organ that has been removed from the body—"the gift cannot be revoked because possession and dominion have already been relinquished." Pls.' Supp. Br. 11, ECF No. 43. But an agreement to donate one's organs is not an agreement to donate one's entire body, and a person can surrender a body for the limited purpose of giving certain organs without surrendering dominion or rights to the body altogether. And while a decedent may not be able to exercise dominion after he or she passes, the decedent's family can.

Moreover, Plaintiffs contend that "[d]uring the preliminary injunction hearing, Defendants for the first time asserted that Act 861 does not allow revocation of an anatomical gift for any organ that can be procured within two hours of a donor's cardiac death or when a cross clamp is applied." Pls.' Supp. Br. 7, ECF No. 43. But Plaintiffs overlook that Defendants have consistently argued that Arkansas's common law relating to gifts applies and interplays with Act 861, *see* Defs.' Opp. to Mot. for PI 10, ECF No. 35, and Defendants' arguments at the preliminary-injunction hearing simply elaborated on their previously made common-law arguments when it became apparent that Plaintiffs either misunderstood Defendants' arguments based on the testimony offered and arguments made at the preliminary-injunction hearing.

Plaintiffs next point to a question that the Court posed to Defendants' counsel regarding how a donor can exercise dominion after he has died, suggesting Defendants may have made a

12

concession about their common-law arguments. But Defendants' counsel's responses—"I understand Your Honor's concerns" and "I see your point." Pls.' Supp. Br. 8, ECF No. 43—demonstrate respect for the Court and acknowledgement of the Court's views, not concession of a point. Indeed, the Court understood that counsel was not conceding agreement with the point, which is why the Court requested supplemental briefing. After a donor passes, a family member exercises control over donation decisions in accordance with Act 861 and the common law as Defendants have explained.

Aside from that, Plaintiffs broadly assert that Arkansas common law doesn't fill in whatever gaps are left open by Act 861. They contend, for instance, that "Defendants' position that only organs procured within two hours become irrevocable donations is wholly unsupported once the OPO has already accepted the gift of all transplantable parts." Pls.' Supp. Br. 9, ECF No. 43. Defendants are not quite sure what Plaintiffs mean by this, but it seems to be an inaccurate representation of Defendants' position. Act 861 itself does not allow for revocation of a donation decision to occur until two hours have passed, and under the common law, any consummated donation (*i.e.*, the "gift" of organs that the OPO has already procured from the body) cannot be revoked. After the two-hour mark, the relevant family member can revoke a donation decision, such as to donate tissues, if the OPO has not yet begun to procure the tissues. But if the relevant family member does not revoke that donation decision and the OPO procures the tissues, the donation of the tissues becomes irrevocable too.

**Estoppel.** In a section on judicial estoppel, Plaintiffs argue that Defendants have "held open the possibility that they could prosecute individuals for violating Act 861," and that Defendants should be estopped from "reversing course in subsequent litigation." Pls.' Supp. Br.

13

13, ECF No. 43. Defendants in no way, shape, or form, are holding open the possibility that they could prosecute Plaintiffs for violating Act 861. Act 861 is not a criminal statute. No one can be prosecuted under it. Instead, as noted above, the purpose of the argument raised in Defendants' Supplemental Brief was to delineate between (1) a stipulation provided by an official that he will not exercise his authority to enforce a specific law, which can be provided by an official when he does in fact possess authority to enforce the challenged law, and is thus entitled to sovereign immunity, versus (2) an argument that an official does not enforce the law in the first place and is thus entitled to sovereign immunity. Eighth Circuit precedent recognizes this distinction. Defendants merely sought to clarify that they are not making a stipulation that they will not exercise their authority to enforce Act 861 because they do not enforce Act 861 in the first place.

## Conclusion

The Attorney General and State Prosecutors should be dismissed on sovereign-immunity grounds because they do not enforce Act 861. Plaintiffs' preliminary-injunction motion should be denied.

Respectfully submitted,

TIM GRIFFIN
Attorney General


By: Ryan Hale
Ark. Bar No. 2024310
Senior Assistant Attorney General

Arkansas Attorney General's Office
101 West Capitol Avenue
Little Rock, AR 72201
(501) 295-7419
(501) 682-2591 fax
ryan.hale@arkansasag.gov

*Attorneys for Defendants*